UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DETROIT CLUB MANAGEMENT
CORP,

          Plaintiff/Counter-Defendant,          Case No. 22-13057

v.                                 HON. MARK A. GOLDSMITH

THE CINCINNATI
CASUALTY COMPANY,

          Defendant/Counter-Plaintiff.

_____/

**OPINION & ORDER**
**(1) GRANTING PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO COMPEL APPRAISAL PROCEEDINGS (Dkt. 17), (2) DENYING DEFENDANT/COUNTER-PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 19), AND (3) STAYING THE CASE**

      Plaintiff/Counter-Defendant Detroit Club Management Corp and Defendant/Counter-Plaintiff Cincinnati Casualty Company dispute whether, under the applicable insurance policies, Detroit Club is entitled to payment for its asserted losses allegedly resulting from smoke damage caused by a dumpster fire.  Cincinnati Casualty has refused to submit to the statutory appraisal process to resolve the claims, arguing that the Court must first determine whether Detroit Club's losses are covered under the policy.

      Consistent with its view that the parties' dispute is one of coverage for the Court to resolve, Cincinnati Casualty moves for summary judgment on Detroit Club's claims for breach of the insurance contract, violation of Michigan's appraisal statute, and penalty interest.  Cincinnati Casualty's motion further requests that this Court declare that Detroit Club is not entitled to appraisal, costs, attorney fees, or penalty interest.  Detroit Club argues that the dispute is not one of "coverage"—i.e., the meaning of policy terms.  Rather, it says the dispute is one of causation—

i.e., whether the fire caused the losses claimed by Detroit Club.  In Detroit Club's view, the issue of causation is for the statutory appraisal process to resolve.  Detroit Club moves to compel appraisal under Michigan's statutory appraisal scheme.  Because there are no coverage issues for the Court to resolve, the Court grants Detroit Club's motion and denies Cincinnati Casualty's motion.[1]

## I.  BACKGROUND

Detroit Club owns a commercial building located at 712 Cass Avenue, Detroit, Michigan. Br. Supp. Mot. to Compel at 1; Resp. to Mot. to Compel at 1.  Detroit Club and Cincinnati Casualty, a commercial insurer, are parties to an insurance contract covering the Cass Avenue building.  Br. Supp. Mot. to Compel at 2; Resp. to Mot. to Compel at 1.  The policy provides that Cincinnati Casualty will pay for accidental physical loss or damage caused by a covered loss that is not otherwise excluded under the policy.  See Policy at PageID.431, 433 (Dkt. 17-3).

On February 25, 2021, Detroit Club submitted a claim under the policy asserting that the Cass Avenue building suffered smoke damage from a nearby dumpster fire.  Cincinnati Casualty's Statement of Undisputed Material Facts (SOMF) ¶ 2.  According to Detroit Club, the fire caused smoke to spread throughout the interior of the Cass Avenue building, including the upper and lower-level floors, mechanical spaces, and stairwells.  Detroit Club's Counterstatement of Material Facts (COMF) ¶ 2.  To support its claim, Detroit Club submitted to Cincinnati Casualty an estimate of $841,722.18, which was based on a damage assessment report from its environmental

---

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing.  See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).  In addition to Detroit Club's motion to compel (Dkt. 17) and Cincinnati Casualty's summary judgment motion (Dkt. 19), the briefing includes Cincinnati Casualty's response to Detroit Club's motion (Dkt. 20), Detroit Club's reply in support of its motion (Dkt. 25), Detroit Club's response to Cincinnati Casualty's motion (Dkt. 21), and Cincinnati Casualty's reply in support of its motion (Dkt. 24).

consultant.  Id. ¶ 4; 3/20/21 Estimate at PageID.670 (Dkt. 17-4).  Cincinnati Casualty disputed Detroit Club's estimate, and following its own investigation, determined that certain areas of the building suffered no smoke damage.  SOMF ¶ 19; 6/20/22 Letter at PageID.931 (Dkt. 19-1). Consistent with its investigation, Cincinnati Casualty paid Detroit Club a total of $179,946.30 for direct physical loss to covered property.[2]  Id.

In addition to Detroit Club's claim for building damages, it submitted a claim for lost business income and extra expense that were allegedly caused by the smoke damage.[3]  COMF ¶ 11; Meaden & Moore Analysis Report (Dkt. 17-7).  According to Detroit Club, it is entitled to the policy limit of $100,000 for such losses.  COMF ¶ 11.  Cincinnati Casualty contends that Detroit Club is not entitled to any payment for such losses because it did not suffer any business income or extra expense losses.  Reply in Supp. of Mot. for Summ. J. at 5.

After failing to reach an agreement on Detroit Club's entitlement to payment, in June 2022, Detroit Club demanded appraisal of its claims.  SOMF ¶ 17.  Cincinnati Casualty refused Detroit Club's demand for appraisal later that month.  Id. ¶ 18.  Detroit Club then brought this action alleging that Cincinnati Casualty (i) breached the policy contract, (ii) violated Michigan law governing appraisal under Mich. Comp. L. § 500.2833, and (iii) owes Detroit Club penalty interest

---

[2] Based on the correspondence records provided by the parties, the total amount paid to Detroit Club consists of three payments furnished by Cincinnati Casualty over the course of a year: (i) $54,341.92 on April 28, 2021 (adjusted to $4,341.92 after application of $50,000 policy deductible); (ii) $66,680.28 on February 24, 2022; and (iii) $58,924.10 on June 20, 2022.  See 4/8/21 Letter at PageID.881 (Dkt. 19-1); 2/24/22 Letter at PageID.909 (Dkt. 19-1); 6/20/22 Letter at PageID.931.

[3] The policy defines "business income" as "net profit or loss before income taxes that would have been earned or incurred; and . . . [c]ontinuing normal operating expenses sustained, including payroll."  Policy at PageID.466 (punctuation modified).  "Extra expense" means "necessary expenses [the insured] sustain[s] . . . would not have [been] sustained if there had been no direct loss to property caused by or resulting from a covered cause of loss." (punctuation and capitalization modified).

under Mich. Comp. L. § 500.2006.  Compl. (Dkt. 1).  Cincinnati Casualty asserts counterclaims for declaratory relief stating that Cincinnati Casualty (i) did not breach the parties' insurance contract, (ii) complied with Mich. Comp. L. § 500.2833, and (iii) does not owe Detroit Club penalty interest under Mich. Comp. L. § 500.2006.  Counterclaim (Dkt. 6).

Detroit Club now moves to compel Cincinnati Casualty to participate in the appraisal process set forth under § 500.2833(l)(m).  Cincinnati Casualty moves for summary judgment on Detroit Club's claims and requests that this Court declare that Detroit Club is not entitled to appraisal, costs, attorney fees, or penalty interest.

## II. ANALYSIS[4]

Because Detroit Club's motion to compel and Cincinnati Casualty's summary judgment motion depend on the Court's determination of whether the parties must submit their dispute for appraisal under Mich. Comp. L. § 500.2833(l)(m), the Court proceeds by first addressing the issue of appraisal under Michigan law and then addressing Cincinnati Casualty's motion for summary judgment on Detroit Club's claim for penalty interest.

### A. Appraisal

Michigan law, which governs this diversity action, employs a statutory process through which insurers and insureds can efficiently resolve disputes about the amount of an insured's covered loss through an appraisal process.  See Mich. Comp. L. § 500.2833(1)(m)

---

[4] With respect to Cincinnati Casualty's summary judgment motion, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007). The movant is entitled to summary judgment if that party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can only survive summary judgment by coming forward with evidence showing there is a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1986).

("[I]f the insured and insurer fail to agree on the actual cash value or amount of the loss, either party may make a written demand that the amount of the loss . . . be set by appraisal . . . .").   To distinguish whether a policy dispute should be resolved by appraisers or a court, the leading Michigan case on the subject has explained that "the issue of coverage is for the court, not the appraisers . . . . Where the parties cannot agree on coverage, a court is to determine coverage in a declaratory action before an appraisal of the damage to the property."   Auto-Owners Ins. Co. v. Kwaiser, 476 N.W.2d 467, 469–470 (Mich. Ct. App. 1991).

Although Kwaiser does not specifically define what constitutes an "issue of coverage," federal courts addressing this issue offer guidance.   Interpreting Michigan case law, the United States Court of Appeals for the Sixth Circuit explained that the district court "interpret[s] [a] policy's terms" and "appraisers resolve . . . any factual disputes about the amount of an insured's loss.   Scottsdale Ins. Co. v. Altman Mgmt. Co., 832 F. App'x 998, 999 (6th Cir. 2021).   In other words, while "coverage issues" for resolution by courts include "legal questions of what [a] policy does or does not cover," appraisers "resolve factual disputes . . . such as whether particular damage was caused by a covered event or some other cause . . . ."   Seneca Special Ins. Co. v. ID Ventures, LLC, No. 22-cv-11599, 2023 WL 2618253, at *4–*5 (E.D. Mich. Mar. 23, 2023) (explaining that the parties' dispute regarding whether policy language allowed insured to recover loss of value to building as a result of fire, despite receiving full pre-fire value in a post-fire sale, was a threshold issue for the court, while the parties' dispute regarding the amount of loss caused by fire damage was a question of fact for appraisers).

Following the Sixth Circuit's lead, courts in this district—including this Court—have "universally adopted a broad view of <u>Kwaiser</u>," and consistent with this broad view, have repeatedly held that appraisers—and not the courts—resolve disputes regarding causation. <u>Proto Gage, Inc. v. Fed. Ins. Co.</u>, No. 21-12286, 2023 WL 6396660, at *3 (E.D. Mich. Sept. 29, 2023) (quoting <u>Shina v. State Farm Fire & Cas. Co.</u>, No. 22-cv-010080, 2022 WL 989330, at *4 (E.D. Mich. Mar. 31, 2022) (<u>Shina II</u>) (collecting cases)).[5] "Thus, courts make legal determinations as to the categories of coverage; appraisers make factual findings as to whether specific damage fits into those categories or not." <u>Cox v. State Farm Fire & Cas. Co.</u>, No. 19-12235, 2020 WL 1888824, at *7 (E.D. Mich. Apr. 16, 2020).

Detroit Club argues that the parties' disagreement concerns a factual dispute regarding the scope of its losses caused by the smoke, and that this is a fact question for appraisal. Br. Supp. Mot. to Compel at 6–7. Cincinnati Casualty responds by arguing that this case poses an issue of coverage that must be resolved by the Court because the parties dispute whether Detroit Club is entitled to recover for losses that Cincinnati Casualty maintains were not damaged by the smoke. Resp. to Mot. for Summ. J. at 13; Resp. to Mot. to Compel at 6.

The Court agrees with Detroit Club that the parties' disagreement amounts to a factual dispute for resolution by the appraisers. Although Cincinnati Casualty characterizes this case as a dispute about its "coverage determination," Resp. to Mot. to Compel at 4, the parties do

---

[5] <u>See</u> <u>Shina II</u>, 2022 WL 989330, at *5 (citing <u>Hart v. State Farm Fire & Cas. Co.</u>, 556 F. Supp. 3d 735, 746 (E.D. Mich. 2021) (rejecting insurer's argument that the "scope of repairs" to a fire-damaged home was a "matter of coverage and not of price"); <u>Laframboise v. State Farm Fire and Cas. Co.</u>, 588 F. Supp. 3d 763, 768 (E.D. Mich. 2022) (concluding that there was no coverage dispute where parties disagreed about whether damage to a house from a fallen tree caused mold damage and necessitated rebuilding of the house because this disagreement necessitated a "factual assessment of the house")).

not raise the sort of coverage dispute reserved for judicial determination under Michigan law.  See Laframboise, 588 F. Supp. 3d at 768 (E.D. Mich. 2022) (explaining that a coverage dispute is one that involves the "interpretation of [a] policy").  Notably, Cincinnati Casualty does not dispute the meaning of any term under the policy; it only disputes whether certain areas of the property were in fact damaged by the smoke.  See Resp. to Mot. to Compel at 6.  This is precisely the sort of factual dispute that Michigan law reserves for appraisers.  See Scottsdale, 832 F. App'x at 999 (explaining that, under Michigan law, "appraisers resolve (at least in the first instance) any factual disputes about the amount of an insured's loss" while the court interprets the policy's terms).

As Detroit Club points out, courts in the Sixth Circuit have repeatedly held that appraisers make the factual determination of whether an insured's asserted loss is attributable to a covered or non-covered event.  Br. Supp. Mot. to Compel at 10–13 (citing Haddock v. State Farm Fire & Cas. Co., 638 F. Supp. 3d 748, 761 (E.D. Mich. 2022) (holding, in part, that defendant-insurer could not "avoid the appraisal process on the ground that there [was] a dispute over causation with respect to some of the damage for which [plaintiff-insured] [sought] reimbursement" and explaining, "appraisers may—indeed, must—resolve questions of whether damage claimed by the insured was caused by the covered cause of loss") (punctuation modified); Cox, 2020 WL 1888824, at *7 ("[C]ourts make legal determinations as to the categories of coverage; appraisers make factual findings as to whether specific damages fit into those categories of coverage or not."); Midtown Inv. Grp. v. Mass. Bay Ins. Co., No. 20-cv-10239, 2021 WL 3164274, at *5 n.4 (E.D. Mich. July 27, 2021) ("While the appraisers' role is in some sense always limited to valuation, appraisers are sometimes called upon to determine factual questions such as whether a particular loss is attributable to a

covered or non-covered event."); <u>Smith v. State Farm Fire & Cas. Co.</u>, 737 F. Supp. 2d 702, 711 (E.D. Mich. 2010) ("[D]eciding what damages fall into which of the two defined categories seems appropriately addressed by the appraisers . . . ."); <u>UrbCamCom/WSU I, LLC v. Lexington Ins. Co.</u>, No. 12-cv-15686, 2014 WL 1652201, at *1, *4 (E.D. Mich. Apr. 23, 2014) (ordering the parties to submit to appraisal a dispute regarding the amount of plaintiff's "business interruption losses" stemming from water damage from ruptured fire sprinklers where defendant-insurer had argued that "business interruption loss" was a "coverage issue for court to decide"); <u>Olivet College v. Indiana Ins. Co.</u>, No. 98-cv-821 (W.D. Mich. 1998) (available at Dkt. 17-8) (concluding that a dispute about whether a claimed loss was arbitrable where it resulted from a ruptured steam pipe that insurer conceded was a covered loss was an issue for the appraiser)).

Cincinnati Casualty argues that these cases are inapplicable because the dispute in those cases involved the scope of damage to the property—not a dispute over whether a portion of the property suffered damage, which Cincinnati Casualty asserts is the case here. Resp. to Mot. to Compel at 6–9. Cincinnati Casualty's attempt to distinguish Detroit Club's case law fails. Like the insurers in those cases, Cincinnati Casualty has both acknowledged coverage for Detroit Club's loss caused by the smoke and purported to dispute it. Indeed, Cincinnati Casualty has already paid $179,946.30 on Detroit Club's claim—all while disputing whether portions of the property suffered any damage. SOMF ¶ 19. In other words, Cincinnati Casualty acknowledges that smoke damage triggers its coverage obligations, but disputes the scope of the damage.  In this way, Cincinnati Casualty is no different from the insurers in Detroit Club's cases, as it has both acknowledged coverage and purported to dispute it.

8

Cincinnati Casualty's bobbing and weaving on coverage determination demonstrates not only that it is in good company with other insurers that have been ordered into appraisals; it shows the perniciousness of assigning dispositive treatment to an insurer's pronouncement that it is denying coverage.  It would undermine Michigan's legislative scheme to make the availability of the appraisal process turn on whether the insurer had announced a decision to contest coverage.   If an insurer could successfully block an appraisal by initially acknowledging coverage and then recanting—as Cincinnati Casualty attempts to do here—the appraisal process would become illusory.  Nothing would stop an insurer from identifying supposedly new information or generating some new analysis based on existing facts and then asserting a justification for renouncing its earlier admission of liability.  This would mean no appraisal process would be safe from being derailed by an insurer that grows unhappy with that process.  If the contest between an insured and insurer is a factual one—such as a dispute over the scope of damages or causation—it must be resolved by the process selected by the legislature, regardless of whether an insurer intones that it is denying coverage.  Because the parties' disagreement amounts to a factual dispute—and not one of coverage—the Court concludes that it must be resolved by the appraisers.

Setting aside the nature of the parties' dispute, Cincinnati Casualty also argues that Detroit Club's motion to compel must fail with respect to its business interruption and extra expense claim because it has failed to comply with the policy provisions by: (i) failing to specify its business interruption and extra expense claim in its demand for appraisal and (ii) failing to provide "all necessary documentation."  Resp to Mot. to Compel at 9.  Therefore, Cincinnati Casualty argues, Detroit Club's failure to comply with the policy provides

Cincinnati Casualty with a "viable coverage defense" that must be adjudicated by the Court. Id. Neither argument has merit.

As to the first, Detroit Club's demand for appraisal is sufficient to include its business interruption and extra expense claim. Michigan's appraisal statute provides that a party seeking appraisal "may make a written demand that the amount of loss or the actual cash value be set by appraisal." Mich. Comp. L § 500.2833(1)(m). Here, Detroit Club has done just that. Its demand for appraisal states: "Since [the parties] are not able to reach an agreement as to the Replacement Cost Value or Actual Cash Value of the loss and damage on [Detroit Club's claim], [Detroit Club] hereby demand[s] appraisal." 6/20/22 Demand at PageID.934 (Dkt. 19-1). Tellingly, Cincinnati Casualty cites no authorities supporting the proposition that Detroit Club's demand should be narrowly interpreted to exclude its business interruption and extra expense claim.

As to its second argument, Cincinnati Casualty's cursory assertion that Detroit Club violated the policy by failing to provide "all necessary documentation" related to its business interruption and extra expense claim is unavailing. See Resp to Mot. to Compel at 9. It does not specify the documents that Detroit Club allegedly failed to provide. Instead, it cites to letters it sent to Detroit Club vaguely stating that Cincinnati Casualty's accounting firm was awaiting "further documents" related to the claim. Id. (citing 4/28/21 Letter (Dkt. 19-1); 6/9/21 Letter at PageID.1057 (Dkt. 20-1); 8/13/21 Letter at PageID.1061 (Dkt. 20-1); 10/25/21 Letter at PageID.1068 (Dkt. 20-1)). In addition, Cincinnati Casualty fails to specify which policy provision it believes Detroit Club violated or why that would raise a coverage

issue. See id. at 9–10; Br. Supp. Mot for Summ. J.[6]  The Court sees no policy violation that

provides Cincinnati Casualty a coverage defense that the Court must decide.

Because Cincinnati Casualty has not raised any issues of coverage appropriate for

adjudication by this Court, Detroit Club's claim must be submitted to appraisal.

## B.  Penalty Interest

Cincinnati Casualty also moves for summary judgment on Detroit Club's claim for

penalty interest under Mich. Comp. L. § 500.2006.  See Br. Supp. Mot. for Summ. J. at 18–

23.  Under that provision, an insurer is assessed interest on a claim if it fails to pay that claim

within 60 days after submission of proof of loss:

> (1) A person must pay on a timely basis to its insured . . . the benefits provided
> under the terms of its policy, or, in the alternative, the person must pay to its
> insured . . . 12% interest, as provided in subsection (4), on claims not paid on
> a timely basis.
>  . . .
>
> (4) If benefits are not paid on a timely basis the benefits paid shall bear simple
> interest from a date 60 days after satisfactory proof of loss was received by the
> insurer at the rate of 12% per annum, if the claimant is the insured. . . .  The
> interest shall be paid in addition to and at the time of payment of the loss. If
> the loss exceeds the limits of insurance coverage available, interest shall be
> payable based upon the limits of insurance coverage rather than the amount of
> the loss.

§ 500.2006; see also Bowlers' Alley, Inc. v. Cincinnati Ins. Co., 122 F. Supp. 3d 675, 678

(E.D. Mich. 2015) (providing overview of application of penalty interest under § 500.2006).

In  addition,  the  statute  requires  that  the  insurer  "specify  in  writing  the  materials  that

---

[6] Attempting to support its argument, Cincinnati Casualty cites to Haddock, where the court
concluded that although questions related to causation were for the appraisers to resolve, the
insurer's assertion of a viable coverage defense of fraud by the insured was an issue for the court
to decide.  Resp to Mot. to Compel at 9–10 (citing Haddock, 638 F. Supp. 3d at 761).  But unlike
the insurer in Haddock, here, Cincinnati Casualty asserts no allegations of fraud by Detroit Club
and otherwise raises no viable coverage defense for the Court to decide.

constitute a satisfactory proof of loss not later than 30 days after receipt of a claim unless the claim is settled within the 30 days."  § 500.2006(3).  "The failure to specify in writing the materials which constitute satisfactory proof of loss excuses the requirement of said proof of loss in . . . § 500.2006(4)."  455 Companies, LLC v. Landmark Am. Ins. Co., No. 16-10034, 2018 WL 11357858, at *4 (E.D. Mich. June 18, 2018) (quoting Medley v. Canady, 337 N.W.2d 909, 912 (Mich. Ct. App. 1983)).

Detroit Club's position is that penalty interest on its claim began accruing on either (i) April 26, 2021, 60 days after it first submitted its claim to Cincinnati Casualty; or (ii) on February 26, 2022, 60 days after it submitted proof of its building repair estimate in support of its damages.  Resp. to Mot. for Summ. J. at 23 (citing SOMF ¶ 2 (stating that "[o]n February 25, 2021, Detroit Club submitted a claim to Cincinnati Casualty that it suffered smoke damage to its insured premises earlier on that date")).  Cincinnati Casualty disputes this and argues that Detroit Club is not entitled to penalty interest because (i) the "areas of the insured premises that suffered direct loss due to a covered cause of loss were paid on a timely basis" and (ii) Detroit Club never submitted a satisfactory proof of loss.  Br. Supp. Mot. for Summ. J. at 22.

Cincinnati Casualty's first argument goes to the parties' dispute regarding the scope and extent of Detroit Club's claimed losses.  As the Court explains above, whether certain areas of the property were in fact damaged by the smoke is a factual dispute that Michigan law reserves for appraisers.  Cincinnati Casualty is not entitled to summary judgment on Detroit Club's claim for penalty interest simply because it disagrees with the scope of Detroit Club's asserted losses.  That issue must be resolved by the appraisers.

As to Cincinnati Casualty's second argument—the sufficiency of Detroit Club's proof of loss—Detroit Club was excused of its obligation to provide a proof of loss in light of Cincinnati Casualty's failure to timely specify which materials constitute a satisfactory proof of loss within 30 days of Detroit Club's claim.  An insurer's "failure to specify in writing the materials which constitute satisfactory proof of loss excuses the requirement of said proof of loss in Mich. Comp. Laws § 500.2006(4)."  455 Companies, LLC, 2018 WL 11357858, at *4 (punctuation modified).  Detroit club submits that it did not receive any correspondence from Cincinnati Casualty specifying the materials that would constitute a satisfactory proof of loss until well after 30 days had passed since the February 25, 2021 submission of Detroit Club's claim.  Resp. to Mot. for Summ. J. at 23–24.  Cincinnati Casualty does not dispute this; rather, it points to multiple letters in which Cincinnati Casualty requests additional information from Detroit Club beginning on January 18, 2022 and continuing throughout 2022.[7]  But each of these letters is dated after the March 27, 2021 deadline for Cincinnati Casualty to specify its proof of loss requirements.  Indeed, according to the correspondence submitted by the parties, Cincinnati Casualty did not submit specific requests for information until April 28, 2021—over a month after its deadline to specify a proof of loss.  See 4/28/21 Letter at PageID.881.  Because Cincinnati Casualty failed to specify in writing what materials constitute a satisfactory proof of loss within 30 days of Detroit Club's claim,

---

[7] See Br. Supp. Mot. for Summ. J. at 19–22 (citing 1/18/22 Letter at PageID.905 (Dkt. 19-1) (requesting reinspection of the property and a supplemental recorded statement from Detroit Club's representative, Emre Uralli); 2/24/22 Letter at PageID.909 (requesting reinspection and any additional proof or documentation in Detroit Club's possession); 3/9/22 Letter at PageID.921 (Dkt.19-1) (denying coverage for certain provided in estimate submitted by Detroit Club and requesting further documentation); 5/10/22 Letter at PageID.925 (Dkt. 19-1) (reminding Detroit Club of its duties to provide documentation regarding its claimed loss); 6/20/22 Letter at PageID.929 (providing "new and final estimate" for loss to covered property)).

Detroit Club was excused of its obligation to provide such a proof of loss under § 500.2006(4). Cincinnati Casualty is not entitled to summary judgment on Detroit Club's claim for penalty interest under § 500.2006 on this ground.

Although the Court has determined that Cincinnati is not entitled to summary judgment on Detroit Club's penalty interest claim, the Court reserves judgment regarding the extent to which penalty interest has accrued on benefits owed to Detroit Club under the policy pending the result of the result of the appraisal proceedings. As noted above, Detroit Club offers two dates on which penalty interest began to accrue: April 26, 2021 or February 26, 2022. The parties' present briefing does not squarely address the date on which penalty interest began to accrue. Nor does the briefing meaningfully address whether the payments already furnished by Cincinnati Casualty were timely. Pending the outcome of the statutory appraisal process, the Court will require further briefing from the parties regarding the date of accrual of penalty interest and whether Cincinnati Casualty "timely paid" all benefits to which Detroit Club was entitled under § 500.2006.

### III. CONCLUSION

For the reasons set forth above, Detroit Club's motion to compel appraisal proceedings (Dkt. 17) is granted, and Cincinnati Casualty's motion for summary judgment (Dkt. 19) is denied.[8]

---

[8] Although Cincinnati Casualty's counterclaims are not at presently at issue, the outcome reached in the appraisal process may well moot Cincinnati Casualty's counterclaims for declaratory relief. See Anika & Assocs., Inc. v. Hartford Cas. Ins. Co., No. 11-12534, 2013 WL 1499532, at *5 (E.D. Mich. Apr. 10, 2013) (explaining that appraisal of parties' dispute regarding scope of loss resulting from building damaged by a tornado mooted defendant-insurer's counterclaim for declaratory judgment based on alleged misrepresentations about the estimated damage to the building made by plaintiff-insured). The Court will stay further consideration of the counterclaims until after the appraisal process is completed.

The parties are directed to initiate the appraisal process set forth by Mich. Comp. L. § 500.2833(1)(m).  The parties must select their respective appraisers within 20 days of this opinion and order.  If the appraiser selected by Cincinnati Casualty and the appraiser selected by Detroit Club cannot agree on an umpire within 35 days of this opinion and order, either party may file a motion with the Court for appointment of the umpire, as provided for in the statute.

It is further ordered that this matter is stayed pending determination of the appraisal proceedings, subject to any lifting of the stay upon the filing of any appropriate motion, including to appoint an umpire, or to vacate or enforce any appraisal award.  The Court retains jurisdiction for all such purposes.  Because the Court expects the appraisal process to be completed within 90 days, a status conference will take place on June 27, 2024 at 4:30 p.m. by Zoom unless a proposed order or judgment concluding the case is submitted before that time.

SO ORDERED.


Dated: March 25, 2024                          s/Mark A. Goldsmith
Detroit, Michigan                              MARK A. GOLDSMITH
                                               United States District Judge